1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   BOYD HALL,                          )      No. C 05-4426 MMC (PR)
                                         )
12              Petitioner,              )      **ORDER DENYING PETITION**
        vs.                              )      **FOR WRIT OF HABEAS**
13                                       )      **CORPUS**
     A.P. KANE, Warden, et al.,          )
14                                       )
                Respondent.              )
15   _____)
16

17                            **INTRODUCTION**

18          Petitioner Boyd Hall, a California state prisoner proceeding pro se, filed the above-titled

19   petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a

20   decision by the Board of Prison Terms ("Board") finding him unsuitable for parole.  The Court

21   directed respondent to show cause why petitioner's cognizable claims should not be granted.

22   Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a

23   traverse.  Having reviewed the briefs and the underlying record, the Court concludes that

24   petitioner is not entitled to relief based on the claims presented and will deny the petition.

25                            **BACKGROUND**

26          In 1987, a San Bernardino Superior Court jury convicted petitioner of second-degree

27   murder, see Cal. Pen. Code § 187, and assault with a firearm, see id. § 245(a)(2), with an

28   enhancement for the use of a firearm, see id. § 12022.5.  (Ans. Ex. 1 (Abstract of Judgment) at

1    3).  The trial court sentenced petitioner to fifteen years-to-life, plus five years, in state prison.

2    (Id. Ex. 3 (Parole Hearing Transcript 5/20/03) at 1.)  In May 2003, the Board, for the second

3    time, found petitioner unsuitable for parole, on the ground he "would pose an unreasonable risk

4    of danger to society and a threat to public safety if released at [that] time." (Id. at 13, 40.)

5        The facts of the commitment offense on which the Board relied are as follows.[1]  On the

6    evening of November 13, 1985, Betty and Vernon Harold were getting into their car when

7    petitioner approached Betty Harold, placed a gun at her side, and said, "Raise up the seat."[2]

8    Petitioner then attempted to enter the vehicle, stating, "You're going to drive me down the hill."

9    Vernon Harold told petitioner that he would not give petitioner a ride.  Petitioner then took out a

10   knife and held it to Betty's side, at which point she told her husband petitioner had a knife and a

11   gun.  Vernon and petitioner began yelling at each other and Vernon ran to his wife's side of the

12   car and struggled with petitioner.  As the two men struggled, Betty escaped, and, as she escaped,

13   she heard a gunshot.  She heard a second gunshot as she reached the door of the restaurant she

14   and Vernon had left a few minutes before.  Betty turned around and saw her husband on the

15   ground and petitioner run off, firing the gun twice as he ran.  (Id. Ex. 2 (Probation Department

16   Report 8/28/87) at 2–3; Ex. 3 at 6–7.)

17       At the parole hearing, the Board reviewed petitioner's record, including the

18   circumstances of the commitment offense, his psychological report, his behavior while in prison,

19   the opinions of law enforcement, and his parole plans.  At the conclusion of the hearing the

20   Board found petitioner "continues to be a threat to others."  (Id. Ex. 3 at 42.)  In reaching its

21   decision the Board found the "offense was carried out in an especially cruel and vicious manner"

22   and that multiple victims were attacked, injured, and killed in the same incident.  (Id. Ex. 3 at

23   40.)  The Board also considered the psychologist's report, which indicated petitioner had

---

25   [1]  Petitioner concedes the above summary is "basically true in fact"; the one exception he notes is that "[t]here were three shots fired not four."  (Pet. Ex. C at 1.)

27   [2]  According to a statement written by Betty Harold and read to the Board by Debbie Lantz, the Harolds' daughter, petitioner had asked the Harolds for a ride earlier in the evening. The Harolds refused and went to have dinner.  Petitioner approached the Harolds again as they left the restaurant and were getting into their car.  Although her daughter read the statement, Betty Harold was present at the hearing as well.  (Ans. Ex. 3 at 37–38.)

participated in therapy, that he had "developed some understanding and insight into the crime," and that his likelihood of committing violence was estimated to be no higher than that of an average person in the community. (Id. at 17-18.) Additionally, the Board acknowledged that petitioner had committed very few disciplinary infractions while in prison, the last one having occurred in 1989, that he had no prior criminal history or history of drug or alcohol abuse,[3] that he had completed his AA degree while in prison, and that he had acquired data entry and computer refurbishing skills and completed vocational x-ray technician training. (Id. at 14, 15–16, 17.) As for his parole plans, the Board found petitioner had many offers of places to live, but no offers of employment. (Id. at 18–19.) The Board heard from the San Bernardino District Attorney's Office, which stated its opposition to petitioner's parole. (Id. at 25.) The Board also heard from Betty Harold and Debbie Lantz, the Harolds' daughter, both of whom strongly opposed petitioner's release. (Id. at 34–39.) After a full hearing, at which all of the above factors were considered, the Board found petitioner unsuitable for parole, based on the "especially cruel and vicious" nature of the commitment offense, (id. at 40), the "inconclusive" nature of the psychologist's report (id. at 41), the opposition of law enforcement to his release, and his lack of adequate parole plans (id.).

In response to the Board's decision, petitioner filed state habeas petitions, all later denied, in the California Superior Court, Court of Appeal, and Supreme Court. (Pet. at 4–5.) In 2005, petitioner filed the instant federal petition. As grounds for federal habeas relief, petitioner alleges that (1) the Board's finding of unsuitability was not supported by sufficient evidence, in violation of his right to due process; and (2) the Board has a policy of denying parole, which violates petitioner's due process rights. (See Order to Show Cause at 2.)

## DISCUSSION

**A.     Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

---

Petitioner did, however, attend Alcoholics Anonymous meetings for one year in prison. (Pet. Ex. B at 2.)

1   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose

2   v. Hodges, 423 U.S. 19, 21 (1975).

3        A district court may not grant a petition challenging a state conviction or sentence on the

4   basis of a claim that was reviewed on the merits in state court unless the state court's

5   adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an

6   unreasonable application of, clearly established Federal law, as determined by the Supreme

7   Court of the United States; or (2) resulted in a decision that was based on an unreasonable

8   determination of the facts in light of the evidence presented in the State court proceeding."  28

9   U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  A federal court must

10  presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).  Habeas

11  relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect

12  or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 796 (2001).

13       The state court decision implicated by 2254(d) is the "last reasoned decision" of the state

14  court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d

15  1085, 1091–92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court

16  to have considered the petitioner's claims, the district court looks to the last reasoned state court

17  opinion, which, in this case, is the Superior Court's opinion denying the state petition for a writ

18  of habeas corpus.  (Ans Ex. 5); see Nunnemaker, 501 U.S. at 801–06; Shackleford v. Hubbard,

19  234 F.3d 1072, 1079  n. 2 (9th Cir. 2000).

20  **B.    Petitioner's Claims**

21       **1.    Sufficiency of the Evidence**

22       Petitioner alleges that the Board's decision was based on insufficient evidence, depriving

23  him of federal due process rights under the Fifth and Fourteenth Amendments.[4]  (Pet. at 8–9.)

24

25       [4]  Petitioner contends the Board's continued sole reliance on the unchanging factor of the
26  circumstances of the commitment offense can result in a violation of due process.  (Pet. at 11.)
    While petitioner's general proposition is supported by case law, see Biggs v. Terhune, 334 F.3d
27  910, 916 (9th Cir. 2003), petitioner has not shown the Board violated his right to due process, as
    the Board, in petitioner's case, did not rely solely on the circumstances of the commitment
28  offense; rather, the Board relied on other relevant considerations as well.  Moreover, while the
    circumstances of the commitment offense may, at some point, become irrelevant with respect to

4

1   As noted, the Board identified several reasons for its decision, including the circumstances of the

2   commitment offense, the opposition of law enforcement to the granting of parole, and

3   petitioner's lack of adequate parole plans.  (Ans. Ex. 3 at 40–41.)

4         The Board's denial of parole complies with due process provided that there is "some

5   evidence" to support its decision.  As the Supreme Court has explained, a parole board's

6   decision deprives a prisoner of due process if the Board's decision is not supported by "some

7   evidence in the record," or is "otherwise arbitrary."  See Sass v. California Bd. of Prison Terms,

8   461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary

9   hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454–55 (1985)); see also McQuillion

10  v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same).  Additionally, the evidence underlying the

11  Board's decision must have "some indicia of reliability."  See McQuillion, 306 F.3d at 904.

12  Accordingly, if the Board's determination with respect to parole suitability is to satisfy due

13  process, such determination must be supported by some evidence having some indicia of

14  reliability.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

15        In assessing whether there is "some evidence" to support the Board's denial of parole,

16  this Court must consider the regulations that guide the Board in making its parole suitability

17  determinations.  Pursuant to such regulations, "[t]he panel shall first determine whether the life

18  prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life

19  prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the

20  prisoner will pose an unreasonable risk of danger to society if released from prison."  15 Cal.

21  Code Regs. § 2402(a).  Additionally, the regulations enumerate various circumstances tending to

22  indicate whether or not an inmate is suitable for parole.  Id., § 2402(c)–(d).[5]  One circumstance

23

24  a parole suitability determination, they constitute, at present, some evidence to support the

25  Board's decision.

26        [5]  The circumstances tending to show an inmate's unsuitability are: (1) the commitment
    offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record

27  of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors
    such as a "lengthy history of severe mental problems related to the offense;" and (6) prison

28  misconduct.  15 Cal. Code Regs. § 2402(c).  The circumstances tending to show suitability are:
    (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense

1    tending to show an inmate's unsuitability is that the crime was committed in an "especially

2    heinous, atrocious or cruel manner."  Id., § 2402(c).  Two factors that the parole authority may

3    consider in determining whether such a circumstance exists are whether "[t]he offense was

4    carried out in a manner that demonstrates an exceptionally callous disregard for human

5    suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to

6    the offense."  Id., § 2402(c)(1)(D) & (E).  In addition to these factors, the Board is to consider

7    "all relevant, reliable information available."  Id., § 2402(b).

8         It is now established under California law that the task of the Board is to determine

9    whether the prisoner would be a danger to society if he or she were paroled.  See In re Lawrence,

10   44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence" requirement is that

11   there exists some evidence that the prisoner constitutes such a danger, not simply that there

12   exists some evidence of one or more of the factors listed in the regulations as considerations

13   appropriate to the parole determination.  Id. at 1205–06.

14        Here, the Court cannot say the state court was unreasonable in concluding there is some

15   evidence to support the Board's decision that petitioner would be a danger to society if released.[6]

16   As to the circumstances of the commitment offense, some evidence exists to support the Board's

17   determination that the "offense was carried out in an especially cruel and vicious manner."

18   (Ans. Ex. 3 at 40.)  In particular, the record shows that petitioner, without provocation,

19   approached the Harolds, threatened them with a knife and a gun, and, as Vernon Harold tried to

20   protect his wife, shot him to death.  Based on this record of unpredicted and excessive violence,

21   the Court finds some evidence exists to support the Board's finding that the circumstances of the

22

23

24   _____

25   was committed as a result of stress which built up over time; (5) Battered Woman Syndrome;
     (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans
26   for future including development of marketable skills; and (9) institutional activities that indicate
     ability to function within the law.  Id. § 2402(d).
27

28        [6]  Although the transcript of the parole hearing provides a less than ideal record, given its
     repeated instances of "(inaudible)," there is sufficient evidence in the record to support the
     Board's decision.

1    commitment offense indicate petitioner remained unsuitable for parole in 2003.[7]  Further, in

2    addition to the circumstances of the commitment offense, the Board considered petitioner's lack

3    of adequate parole plans, and the San Bernardino District Attorney's opposition to parole.  In

4    sum, based on the above-described record, the Court finds some evidence exists to support the

5    Board's decision.

6         Accordingly, petitioner is not entitled to habeas relief on this claim.

7         2.    The Board's Alleged Anti-Parole Policy

8         Petitioner also claims that the Board "has a current Anti-Parole Policy or Policy of

9    Underinclusion or demonstrates a Policy of Systematic Bias against those that come before it,"

10   granting "parole in only 1% of the cases." (Pet. at 17.)  Petitioner has provided no evidence,

11   however, that the Board was operating under such a policy.  In any event, even statistical data as

12   to the rate of denial in other prisoners' cases will not suffice to establish that the Board

13   automatically denies parole, or that the Board otherwise improperly made its determination in

14   petitioner's case, as parole may have been properly denied after the Board's individualized

15   assessment of each of those cases.  See Mosby v. Solis, 243 Fed. Appx. 246, 248 (9th Cir. 2007)

16   (holding statistical denial rate insufficient to establish blanket policy to deny parole); see also

17   Cosio v. Kane, No. C 05-1966 CRB (PR), 2007 WL 518599, at *6 (N.D. Cal. Feb. 12, 2007)

18   (holding reliance on statistical data of high percentage of parole denials provides no proof of

19   Board's systematic bias against parole where prisoner received individualized assessment of

20   parole suitability); Morris, 2008 WL 4825927 at *4–5 (holding petitioner failed to demonstrate

21   predetermined outcome of parole hearing where Board provided "detailed rationale" for

22   decision).  Here, there is nothing to suggest, let alone support a finding, that the Board operated

23   under an "anti-parole policy" in assessing petitioner's suitability for parole.  Rather, the Board

24   gave a detailed explanation, based on the specific circumstances of petitioner's case, for its

25

26        [7]  Petitioner also contends that the Board's failure to use "its own uniformity matrix"
     violated his right to due process. (Pet. at 14.)  Petitioner's claim is without merit.  First,
27   petitioner has not shown the Board's alleged failure to use a matrix constitutes a cognizable
     federal constitutional claim.  Second, as petitioner concedes, "reference to the matrix is only
28   compelled after there has been a suitability finding." (Id. at 15); see In re Dannenberg, 34 Cal.
     4th 1069, 1071 (Cal. 2005). (Pet. at 15.)

1  finding that petitioner was unsuitable for parole.  Based on this record, the Board's decision

2  comports with due process.

3       Accordingly, petitioner is not entitled to habeas relief on this claim.

4  **CONCLUSION**

5       Because the record contains, at a minimum, some evidence to support the Board's finding

6  that petitioner would present an unreasonable risk of danger to society if released, the Court

7  finds the state court's determination was neither contrary to nor an unreasonable application of

8  clearly established Supreme Court precedent, nor can the Court say it was based on an

9  unreasonable determination of the facts.

10       Accordingly, the petition for writ of habeas corpus is hereby DENIED.

11       The Clerk shall enter judgment and close the file.

12  **IT IS SO ORDERED.**

13  DATED: December 23, 2008

14

15  MAXINE M. CHESNEY
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28